IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons,<br><br>       Plaintiff,<br><br>  v.<br><br>STRYKER SALES CORPORATION, STRYKER BIOTECH L.L.C., STRYKER CORPORATION, HOWMEDICA OSTEONICS CORP., and JOHN DOES 1-10,<br><br>       Defendants. | )<br>)<br>)<br>)<br>) No. 1:12-cv-00729-RJJ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION TO STAY**

  Plaintiff, Physicians Healthsource, Inc., individually and as the representative of the certified Class, submits this opposition to the Motion of Howmedica Osteonics Corp., Stryker Sales Corporation, Stryker Biotech LLC, and Stryker Corporation (collectively, "Stryker") to stay this action indefinitely "pending final disposition" of certain non-party FCC petitions challenging the validity of 47 C.F.R. § 64.1200(a)(4)(iv). (Doc. 154 at 9).

**Concise Statement of Reasons to Deny the Motion**

  The motion should be denied as untimely because Stryker has known of the FCC proceedings since at least January 2014 and even filed comments with the FCC supporting the petitions February 14, 2014. Yet it has not filed an FCC petition of its own, and it waited until July 18, 2014, to seek a stay. During those six months, the parties briefed cross-motions for summary judgment (which are pending), and Plaintiff expended significant resources compiling a list of subscriber names and addresses in order to mail class notice.

Stryker does not explain its delay, but the motion comes nine days after the Sixth Circuit affirmed class certification and summary judgment for a TCPA fax class in *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, --- F.3d ---, 2014 WL 3317736 (6th Cir. July 9, 2014), one month after the Sixth Circuit vacated an order denying class certification for failure to consider whether the faxes contained adequate opt-out notice, *In re Sandusky Wellness Ctr., LLC*, --- Fed. App'x ---, 2014 WL 2809283 (6th Cir. June 12, 2014), and three months after the Sixth Circuit denied Stryker's petition for interlocutory review of the Court's order granting class certification. The timing of the motion combined with Stryker's failure to explain its delay suggests it is an improper attempt to gain a tactical advantage.

Stryker cites several cases granting similar stays, but none was as advanced as this case or involved such a lengthy delay by the moving party. One district court recently denied a nearly identical motion to stay because (1) the defendants had "long been aware of" the opt-out-notice petitions, (2) they had "not filed an administrative petition" of their own, (3) they "waited three months" to seek a stay, and (4) the defendants did not seek a stay until after the court ruled opt-out violations were independently actionable. (*See* Ex. A, *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, No. 13-347, Order, ECF No. 87 (D. Conn. May 27, 2014)). The same rationale applies here, and the motion should be denied.

## Argument

I. **Standards governing Stryker's burden on a motion to stay.**

Stryker correctly notes the Court has inherent power to issue a stay "to control the disposition of the causes on its docket," under *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). (Defs.' Mem. at 5). But Stryker ignores the next sentence in *Landis*, which holds a

2

party seeking such a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255. A stay should not be of "indefinite duration in the absence of a pressing need." *Id.*

As the Sixth Circuit puts it, a plaintiff "has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). The "balance of hardships" is the "most important consideration," and "judicial economy" is an insufficient basis for a stay. *Int'l Bhd. of Elec. Workers, Local Union No. 2020, AFL-CIO v. AT&T Network Sys. (Columbia Works)*, 879 F.2d 864 (6th Cir. 1989). The motion to stay must be made in a "timely manner." *Netjumper Software, L.L.C. v. Google, Inc.*, 2008 WL 2761022, at *1 (E.D. Mich. July 15, 2008). Stryker fails to establish its entitlement to a stay under these standards.

**II.     The motion should be denied as untimely.**

In *Kaye v. Amicus Mediation & Arbitration Group, Inc.*, No. 13-347, Order, ECF No. 87 (D. Conn. May 27, 2014), a TCPA action alleging violations of the opt-out-notice requirements, the defendant moved for a stay pending resolution of the same FCC proceedings Stryker points to. (Ex. A). The district court denied the motion, filed in May 2014, because the defendants had "long been aware of the issues on which clarification from the FCC is sought." (*Id.* at 1). The court noted it had ruled as a matter of law in September 2013 that "faxes containing defective opt-out notice are independently actionable under the TCPA" and that the defendants indicated in February 2014 that they were "evaluating whether to move to stay this case in order to file an administrative petition with the FCC."

(*Id.* at 1–2). Yet, the defendants "waited three months" to move for a stay, the court noted, and they did so "without having filed any such petition" with the FCC. (*Id.*)

In this case, Stryker has "long been aware" of the pending FCC petitions. It discussed them in its motion for summary judgment filed January 10, 2014, noting that the first-filed FCC petition (the Anda petition) had already been "pending for over three years" and complaining that "[t]he FCC's apparent unwillingness to issue a final, appealable order on any of these petitions effectively prevents those petitioners from seeking redress with the U.S. Court of Appeals for the D.C. Circuit." (Howmedica Mem. Supp. Mot. Summ. J., Doc. 92, at 21–22 n.13). Also, as in *Kaye*, the Court ruled in its order granting class certification on December 11, 2013, that whether the faxes "display a proper opt-out notice" is a common question capable of classwide resolution. (Doc. 88 at 9).

Yet, like the defendants in *Kaye*, Stryker chose not to file an FCC petition or seek a stay before this Court in a timely manner. The case for denying Stryker's motion is even stronger than the motion in *Kaye* because Stryker waited six months (rather than three) to seek a stay. The untimeliness of the motion is in itself a sufficient basis for denial.

### III. The motion is an attempt to gain a tactical advantage.

Stryker concedes a stay sought for "tactical advantage" is inappropriate. (Def.'s Mem. at 6); *see also Everlight Electronics Co., Ltd. v. Nichia Corp.*, 2013 WL 1821512, at *7 (E.D. Mich. Apr. 30, 2013) (denying stay sought for "tactical advantage"). Stryker does not explain why it failed to move for a stay until July 18, 2014, but the chronology of events is telling. Nine days prior to the motion, the Sixth Circuit issued a landmark decision in *Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*, --- F.3d ---, 2014 WL 3317736 (6th Cir. July 9, 2014). That

decision affirmed the district court's class certification and entry of summary judgment in favor of the class in a TCPA fax class action. *Id.* at *1. The Sixth Circuit rejected several arguments commonly raised by defendants in TCPA fax cases, particularly arguments regarding Article III standing and the ascertainability of such classes. *Id.* at *3–5.

Stryker's motion comes just over a month after the Sixth Circuit decided *In re Sandusky Wellness Ctr., LLC*, --- Fed. App'x ---, 2014 WL 2809283 (6th Cir. June 12, 2014). In that case, the Sixth Circuit vacated an order denying class certification in a TCPA fax case because the district court "failed to consider whether the facsimiles transmitted by the defendants contained opt-out notices or whether those opt-out notices were adequate," thus becoming the third circuit court to recognize an independent cause of action for opt-out violations, joining the Seventh Circuit, *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir.2013), and the Eighth Circuit, *Nack v. Walburg*, 715 F.3d 680, 683 (8th Cir. 2013).

Stryker also waited to seek a stay until after the Sixth Circuit ruled on its Rule 23(f) petition for interlocutory review of this Court's order granting class certification, which was denied. (Doc. 140). Stryker's delay also allowed it to decide whether to seek a stay until after cross-motions for summary judgment were fully briefed. Plaintiff not only laid out its case on the merits (Doc. 98), it had to respond to Stryker's arguments on the merits (Doc. 109). Stryker's motion came just days before Plaintiff filed its list of class member names and addresses for sending class notice (*see* Doc. 156), which Stryker previously argued Plaintiff would not be able to do (*see, e.g.*, Doc. 152).

In sum, Stryker waited to decide whether to seek a stay until after it got a better look at Plaintiff's case on the merits, after the Sixth Circuit refused to hear its appeal of class

certification, and after the Sixth Circuit issued two important rulings for plaintiffs in TCPA fax cases. With no explanation from Stryker for its delay, the most reasonable conclusion is that Stryker elected not to file a petition or seek a stay in February 2014 but later had a change of heart due to subsequent developments. Stryker is therefore seeking an improper tactical advantage through a stay, and the Court should refuse.

### IV.     The proposed stay would cause undue delay.

Stryker admits it "do[es] not know, and cannot estimate, when the FCC will rule on these petitions, or what appeals may ensue." (Def.'s Mem. at 3). The history of the proceedings to date and the notoriously slow track record of the FCC and the D.C. Circuit Court of Appeals demonstrates the "final disposition" Stryker seeks will likely take another three to five years, and that is only if TCPA defendants do not continue filing petitions raising new arguments against the opt-out-notice regulation (which they have shown no compunction about doing).

The first opt-out-notice petition was filed by Anda on November 30, 2010. (Ex. B, FCC Order on Anda Petition, May 2, 2012 ("Anda Order")). The FCC's Bureau of Governmental and Consumer Affairs decided the petition 17 months later, on May 2, 2012. (*Id.*) Anda petitioned for discretionary review to the full FCC on May 14, 2012. More than two years later, there has been no ruling on that petition. The full Commission is not required to accept review; it may dismiss the petition "without specifying reasons therefor." 47 C.F.R. § 1.115(g). There is no deadline for the FCC to rule, and once it does, any aggrieved party may petition for reconsideration (for which there is no time limit). *Id.*

6

FCC proceedings are notoriously time consuming. *E.g., Telecommc'ns Research & Action Ctr. v. FCC*, 750 F.2d 70, 80–81 (D.C. Cir. 1984) (involving five- and two-year delays by FCC); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 101 (N.D. Ill. 2013) (denying stay, holding plaintiff would be prejudiced because FCC adjudication would likely take over two years); *In re Core Commc'ns, Inc.*, 531 F.3d 849, 856, 859 (D.C. Cir. 2008) (chastising FCC for taking six years to state position on authority to promulgate rule, holding, "[i]f the FCC believes it has authority, it should not take six years to put its rationale in writing").

Against this record, Stryker urges the Court to find that "the FCC is giving focused attention to this very important issue" because (1) a number of petitions have been filed, (2) the FCC has "solicited comments from interested parties," and (3) FCC staff have met with interested parties. (Def.'s Mem. at 2–3). The number of petitions filed demonstrates only that numerous TCPA defendants are seeking to escape liability by asking the FCC to change the law retroactively. They have had no success in the courts, which have consistently enforced the plain language of the regulation. *See In re Sandusky Wellness*, --- Fed. App'x ---, 2014 WL 2809283 (6th Cir. June 12, 2014); *Turza*, 728 F.3d at 684; *Nack*, 715 F.3d at 683. As for the public notices seeking comments, the FCC is required to issue those notices under 47 C.F.R. § 1.415. They do not indicate anything. Regarding the meetings with FCC staff, again, FCC rules provide for such meetings. 47 C.F.R. § 1.1206. Anda has met with FCC staff regarding its petition at least 10 times over the past two-plus years. (*See* Ex. C, Anda Notices of Ex Parte Meetings (June 8, 2012–Mar. 18, 2014)).

Moreover, although it is unclear exactly what Stryker is asking for, it arguably is requesting a stay pending judicial appeals on the Anda petition. Assuming an appeal goes to

the D.C. Circuit, that court has the second-longest median time for decision on appeal from an agency ruling of all the circuit courts at 16.2 months. (Ex. D, Administrative Office of the U.S. Courts, Median Time Intervals in Months for Merit Termination of Administrative Agency Appeals, by Circuit (Sept. 30, 2013)). An appellate court could *easily* take two years to decide Anda's appeal. If the Supreme Court accepts certiorari, all bets are off.

It is also unclear whether Stryker is seeking a stay pending final disposition of the Anda petition or simply the last of the opt-out petitions to wind its way through the FCC proceedings and the appellate courts. If it is the latter, it is impossible to estimate when (or even if) that day will ever come because TCPA defendants have no compunction about filing new FCC petitions raising previously rejected arguments. The Bureau rejected Anda's argument that there is no private right of action for opt-out violations more than two years ago. But over a dozen TCPA defendants have re-petitioned the Bureau on the exact same argument. There is nothing to stop TCPA defendants from filing additional petitions raising the same arguments in perpetuity.

TCPA defendants are also skilled at finding new arguments on which to petition. In July 2013, Forest Pharmaceuticals raised new arguments (not raised in Anda's petition) that the FCC should create a retroactive "substantial compliance" defense or issue judicially binding "waivers" telling the courts not to enforce the regulation. (Ex. E, Forest Pharms. Pet. at 10–12). New petitions trickle in on a regular basis as TCPA defendants attempt to seize the opportunity to have their cases stayed indefinitely for years. The latest petitions were filed July 16 and July 17, 2014. There is no cutoff date for the filing of petitions, and so

there is no telling what new arguments the FCC, the courts of appeals, or the Supreme Court will be called on to decide while this case sits on hold as Stryker proposes.

**V.     A stay would be futile because the FCC is unlikely to change its position.**

Stryker contends the arguments that the FCC lacked authority to issue the regulation are "extremely strong." (Def.'s Mem. at 3). The FCC disagrees. As the FCC explained in its amicus brief in *Nack*, the regulation was "promulgated under the grant of authority that Congress gave the FCC" under the TCPA, and it is "tied" to the TCPA's purposes because it "allow[s] consumers to stop unwanted faxes in the future." (Ex. F, FCC Amicus Br., *Nack v. Walburg*, No. 11-1460 (8th Cir), 2012 WL 725733, at 6, 20 (Feb. 24, 2012)). In a supplemental brief, the FCC stated the defendants were "subject to liability in a private civil action" because "they chose to violate a binding FCC rule in effect at the time without first challenging its lawfulness" in accordance with the Hobbs Act. (Ex. G, FCC Supp. Amicus Br., *Nack v. Walburg*, No. 11-1460 (8th Cir), 2012 WL 3781344, at 13 (Aug. 21, 2012)).

An agency's interpretation of its own regulations—even in an amicus brief—is entitled to deference unless that interpretation is (1) is plainly erroneous, (2) is inconsistent with the regulation, or (3) there is reason to suspect the interpretation does not reflect the agency's fair and considered judgment. *Talk Am., Inc. v. Mich. Bell Tel. Co.*, 131 S.Ct. 2254, 2260 (2011). There is no such indication here. To the contrary, the FCC's 2006 order promulgating the regulation carefully explained that it was requiring opt-out notice where the sender claims to have "prior express invitation or permission" as part of a comprehensive scheme of rules answering questions left open by that undefined statutory term. (Ex. H, Report and Order and Third Order on Reconsideration, 21 FCC Rcd 3787, 3812 ¶¶ 45–48

9

(rel. Apr. 6, 2006)). The 2006 rules specify (1) whether a sender may obtain permission orally (yes, but the sender has the burden of proof), (2) whether permission once given is permanent (no, the consumer may revoke it), and (3) how the consumer may revoke (only by following the instructions that the sender is, in turn, required to include on the fax). (*Id.*) In doing so, the FCC acted squarely within its statutory power to "implement" the prohibition on faxes sent without "prior express invitation or permission" by defining how such permission is obtained, maintained, and revoked. (*Id.*) The FCC's rationale is solid, and it is so unlikely to change course now that a stay would most likely be futile.

### VI.     If the Court grants a stay, it should order Stryker to pay for Class notice.

Although the plaintiff ordinarily bears the cost of class notice, there are circumstances where costs may properly be shifted to the defendants. *See, e.g.*, *Grace v. City of Detroit*, 145 F.R.D. 413, 418 (E.D. Mich. 1992) (requiring "Defendant bear the cost of the notice to the Plaintiff class," but holding, "[n]otification itself, not merely the expense thereof, is the responsibility of the Class Representatives"). Plaintiff submits that if the Court does grant a stay, Stryker should be required to pay for notice informing the Class (1) why this case has been stayed, (2) the probable length of the stay, given the available data, and (3) a means by which Class members can update their contact information.

### Conclusion

Stryker is not entitled to an indefinite stay of these proceedings pending "final disposition" of the non-party FCC petitions. The motion is untimely, it appears to be an attempt to obtain a tactical advantage, the proposed stay would sidetrack this advanced litigation for years, and it would most likely be futile. The Court should deny the motion.

Respectfully submitted,

PHYSICIANS HEALTHSOURCE, INC.,
individually and as the representative of a
class of similarly-situated persons


s/ Brian J. Wanca
One of the Attorneys for Plaintiff

Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500
Fax: 847/368-1501
bwanca@andersonwanca.com
rkelly@andersonwanca

## CERTIFICATE OF SERVICE

  I hereby certify that on August 1, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.


         s/ Brian J. Wanca