# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly situated persons, | )<br>)<br>)<br>) |
| Plaintiff, | ) No. 1:12-cv-00729-RJJ<br>)<br>) Hon. Robert J. Jonker |
| v. | )<br>) |
| STRYKER SALES CORPORATION, STRYKER BIOTECH LLC, STRYKER CORPORATION, HOWMEDICA OSTEONICS CORP and JOHN DOES 1-10 | )<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO SUPPLEMENT SUBSCRIBER LIST *INSTANTER***

## TABLE OF CONTENTS

                                                                                                                          Page

BACKGROUND ................................................................................................................ 2

ARGUMENT .................................................................................................................... 5

      I.      Application of the "equitable test" of Rule 6(b)(1)(B) demonstrates Plaintiff should be permitted to supplement the subscriber list instanter ................................................................................................ 5

      II.     Plaintiff should be given leave to supplement the subscriber list pursuant to Rule 23(d) ................................................................................................ 7

CONCLUSION ................................................................................................................ 8

# QUESTIONS PRESENTED

Whether Plaintiff has demonstrated under Federal Rule of Civil Procedure 6(b)(1)(B) that it should be given leave to file instanter its final list of subscribers for the purpose of class notice, where notice has not yet been sent, where Defendants have moved to modify the class definition, and where the need for additional time is due third parties beyond Plaintiff's control.

Whether it is in the best interest of the class that Plaintiff be granted leave to file instanter its final list of subscribers for the purpose of class notice, where notice has not yet been sent, where Defendants have moved to modify the class definition, and where the need for additional time is due third parties beyond Plaintiff's control.

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th 2010) ............................................. 5

*Gulf Oil Co. v. Bernard,* 452 U.S. 89 (1981) ................................................................................ 1, 7

*Harris v. Karl*, 2006 WL 1705140 (S.D. Ohio June 14, 2006) ....................................................... 5

*In re Cincinnati Radiation Litig.*, 187 F.R.D. 549 (S.D. Ohio 1999) ............................................. 7

*Reese v. CNH Global N.V.*, 2014 WL 840076 (E.D. Mich. Mar. 4, 2014 ...................................... 6

**Rules**

E.D. Mich. LR 7.1(d) ....................................................................................................................... 8

Fed. R. Civ. P. 6(b)(1)(B) ..................................................................................................... 1, 5, 6, 7

Fed. R. Civ. P. 6(b)(2) ..................................................................................................................... 5

Fed. R. Civ. P. 23 ............................................................................................................................. 8

Fed. R. Civ. P. 23(b)(2) ................................................................................................................... 7

Fed. R. Civ. P. 23(d) .................................................................................................................... 1, 7

Plaintiff, Physician's HealthSource, Inc., submits this memorandum in support of its motion for leave to supplement instanter its previously filed subscriber list, which includes subscriber names and addresses regarding the class certified in this case. To date, Plaintiff has submitted historical subscriber information for 5,863 of the 8,065 telephone numbers to which Defendants sent their faxes. Plaintiff now seeks leave to submit information for an additional 2,938 numbers, leaving approximately 100 numbers unidentified, pursuant to Federal Rules of Civil Procedure 6(b)(1)(B) and Rule 23(d), which gives the Court broad discretion in conducting a class action.

First, allowing Plaintiff to supplement the subscriber list instanter pursuant to Rule 6(b)(1)(B) will not visit any unfair prejudice upon Stryker, nor will it delay this case. Stryker's recently filed motion to amend the class definition is currently pending, and class notice has not been sent. The reasons for the additional time required to identify the additional subscribers are set forth below. Plaintiff respectfully submits its good faith in continuing to work to identify class members is self-evident. Accordingly, Plaintiff has met the requisites under Rule 6(b)(1)(B) for filing the subscriber list after the July 21, 2014 deadline.

Second, Rule 23(d) affords the district court "broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981). An exercise of authority under Rule 23(d) is especially appropriate where the court deems it necessary to "protect the rights of absent class members." *Id.* Courts typically invoke Rule 23(d) to guarantee "members of the class procedural fairness." *Id.* Here, Plaintiff seeks to include all members of the class, which Plaintiff submits is necessary to protect the rights of the absent class members and thus is an appropriate exercise of this Court's Rule 23 authority.

Contemporaneous to this motion, Plaintiff seeks to file under seal the following: a) Plaintiff's proposed supplement to the subscriber list; and b) the previously filed subscriber list with certain corrections.[1]

## Background

On February 20, 2014, the Court entered an Order requiring Plaintiff to compile a list of fax number subscriber names prior to class notice by May 20, 2014. (Doc. No. 120, at 2). Plaintiff's substantial efforts to compile the subscriber list have been previously provided to the Court in prior filings and will not be reiterated here. (*See* Pl.'s Mem. Supp. Mot. Extension of Time to Finalize Subscriber List, Doc. 149, at Page ID 5956-5961). On June 6, 2014, the Court granted Plaintiff an additional 60 days within which to compile the subscriber list. (Doc. 153). In granting that extension, the Court stated:

> On April 15, 2014, Plaintiff issued subpoenas to 101 different carriers for historical subscriber data. Many carriers were local telephone carriers with whom Plaintiff had not previously worked, including some that required technical corrections to subpoenas (e.g. identifying a carrier as TelePacific Communications Corporation as opposed to U.S. TelePacific Corp.). Some carriers required a specific court order before releasing subscriber information. On April 30, 2014, Plaintiff filed a motion for court order to obtain additional subscriber information and made significant progress by the May 20, 2014 deadline. To date, Plaintiff has issued and served 120 subpoenas and has compiled much of the data anticipated. (Docket #149, Page ID 5960). In short, Plaintiff has made diligent efforts to comply with the Court's order and good cause exists to extend the deadline. A sixty day extension is appropriate.

(*Id.*, at Page ID 6369).

On July 21, 2014, Plaintiff filed a subscriber list consisting of approximately 5,863 class members. (Doc. 157). ). Based on the total number of unique fax numbers sent the fax at issue, and notwithstanding Plaintiff's substantial efforts, approximately 2,202 subscribers still needed to be identified. Accordingly, Plaintiff continued its efforts to identify as many class members as

---
[1] The corrections consist of removing the unidentified subscribers and fixing approximately 5 fax numbers and addresses that contained typographical errors.

possible. Plaintiff conducted internet research on the remaining subscribers and also purchased a list of contacts from ProFax, Inc. (*See* Declaration of Michael Gardner, attached hereto as Exhibit 1, at ¶ 5 and 6) (hereinafter, "Gardner Decl."). ProFax compiled its contact list from a variety of sources, many of which are private databases to which it subscribes. (*Id.* at ¶ 5). The ProFax list included contact information for approximately 1,900 of the 2,202 missing subscribers, leaving 302 numbers to be identified. (*Id.* at ¶ 6). Plaintiff used internet research, including but not limited to www.google.com, to identify the remaining 302 numbers. (*Id.* at ¶ 7). To date, approximately 100 numbers remained unidentified. (*Id.* at ¶ 8).

Because purchased historical lists and internet research could contain errors and inaccuracies in that the data sought is 3-5 years old, Plaintiff endeavored to confirm the information obtained by combining the information it manually researched with the information provided by ProFax. (*Id.* at ¶ 7). Using a random number generator, Plaintiff identified a random sample of 50 contacts to call in an effort to verify the number in question was identified correctly during the class period. Upon completion of those 50 calls, two had invalid phone numbers and two had disconnected phone numbers. Forty-six of the remaining subscribers confirmed that the fax number was theirs on the date(s) of the fax(es). (*Id.* at ¶ 7). Furthermore, although there were four subscribers Plaintiff was unable to reach, such a circumstance does not necessarily reflect incorrect subscriber information, but that the number could not be verified. (*Id.* at ¶ 7).

In addition, Plaintiff further became aware that of the approximately 5,863 fax numbers listed in the July 21, 2014 filing (Doc. 157), approximately 800 fax numbers had incomplete records provided by AT&T (which has to date not provided the requested information). (*Id.* at ¶ 8). Therefore, Plaintiff sought to identify those 800 subscribers, again using the list purchased

from Profax and internet research. (*Id.* at ¶ 8). Using the Profax list, Plaintiff was able to identify in excess of 500 numbers, leaving approximately 300 numbers to be manually researched. (*Id.* at ¶ 8). Although this research is still being finalized, Plaintiff believes it has identified approximately 198 numbers, leaving approximately 102 total subscribers unidentified. (*Id.* at ¶ 8).

In sum, out of the 8,065 fax numbers set forth in the Court's Order granting certification (Doc. 88 at 2), Plaintiff has to date identified the historical subscribers to 5,034 unique fax numbers, plus the 2,738 additional subscribers, for a total of 7,929, leaving approximately 100 class members unidentified.[2]

In first ordering that the subscriber list be compiled, the Court stated:

> The Court orders Plaintiff to compile a list of fax number subscriber names prior to class notice. In certifying the class, the Court specifically observed that Plaintiff's proposed class was not ascertainable. Instead, the Court adopted an amended class definition limiting the class to *subscribers of a fax number* that received certain fax invitations from one or more Defendants. (*See id*. (Doc. #88) at 2360). The Court noted that "limiting the class definition to subscribers results in a close fit between the identifiable information (i.e. the fax number) and at least one injury – interrupted use of the fax line." (*Id.* at 2361). This avoided the ascertainability problems of Plaintiff's proposed class definition. (*Id.*) In short, the identification of the actual subscribers is critical to the Court's definition of the class.

(Doc. 120, at Page ID 5506)

Plaintiff now seeks to amend the previously filed subscriber list.

---

[2] Any argument by Stryker that Plaintiff "has not yet scrubbed this list against the national change of address data base, so it is unknown how many of the subpoenaed names and addresses remain valid," *see* Doc. 171 at Page ID 7253, ignores that the Court ordered Plaintiff obtain "historical" subscriber information.

**Argument**

I.  **Application of the "equitable test" of Rule 6(b)(1)(B) demonstrates Plaintiff should be permitted to supplement the subscriber list instanter.**

Motions to extend time filed after the time has expired for an act to be done are governed by Rule 6(b)(1)(B), which states, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Rule 6(b)(2) gives the Court discretion to grant an enlargement of time "where the failure to act was the result of excusable neglect." *Harris v. Karl*, 2006 WL 1705140, at *1 (S.D. Ohio June 14, 2006). The Sixth Circuit has recognized that "excusable neglect" may extend to inadvertent delays. *Id*. The analysis of whether a failure to abide by a specific time deadline constitutes "excusable neglect" is an equitable inquiry, examining all the relevant circumstances surrounding the party's failure to meet the deadline. *Harris*, 2006 WL at *1.

To determine whether a party's failure to meet a deadline constitutes "excusable neglect," courts examine four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant has acted in good faith. *Ahanchian*, 624 F.3d at 1261; *Harris*, 2006 WL at *1.[3] Examination of the Rule 6(b)(1)(B) factors in this case demonstrates conclusively that Plaintiff should be given leave to supplement the subscriber list instanter.

First, there is no danger of prejudice to Stryker. Plaintiff seeks to supplement the class subscriber list to include as many class members as possible, based on its exhaustive efforts to identify same. Class notice has not been sent, and Stryker has recently filed a motion to amend

---

[3] In the context of motions to amend scheduling orders pursuant to Rule 16, "good cause" exists "if a deadline cannot reasonably be met despite the diligence of the party seeking the extension." *Reese v. CNH Global N.V.*, 2014 WL 840076, at *3 (E.D. Mich. Mar. 4, 2014) (citations omitted).

the class definition or alternatively, for leave to file a motion for summary judgment, as to certain class members. (Doc. 161, 162). Plaintiff responded to that motion on October 6, 2014 (Doc. 170). That motion to amend the class definition is currently pending. Additionally, the parties filed a joint status report on October 10, 2014, wherein the parties jointly requested that Court hold the hearing on November 19, 2014 regarding the parties' cross motions for summary judgment but postpone any ruling on the motions for summary judgment until after class notice has been disseminated and the "opt-out period" for class members to request exclusion from the class has expired. (Doc. 171). Under such circumstances, there is no prejudice to Stryker.

Second, Plaintiff has set forth its continuing efforts to identify additional subscribers, which Plaintiff submits explains the necessity of the instant motion, *i.e.*, the "delay" and the reasons for the delay. Moreover, because class notice has neither been approved nor sent, the granting of this motion will result in no delay whatsoever. Indeed, Stryker not only seeks to amend the class definition, it has requested oral argument on that motion. (Doc. 162).

Third, based on the foregoing, Plaintiff submits it is beyond dispute that it acted in good faith in compiling the additional subscribers.

In sum, Plaintiff respectfully submits the equitable analysis called for in determining whether a Rule 6(b)(1)(B) motion should be granted makes clear that Plaintiff should be given leave to supplement the subscriber list. Although Plaintiff could not submit the entire subscriber list by the July 21, 2014 date, Plaintiff nonetheless did not give up and instead continued its efforts to identify as many class members as it could. Plaintiff's actions were taken on behalf of the class and were taken in good faith. The alternative to doing nothing would be that newly identified class members would simply be locked out of the class, even though class notice has not gone out and Defendants are still trying to amend the class definition. Accordingly, Plaintiff

submits equity and doing justice between the parties on the merits weighs strongly if not dispositively on the side of allowing Plaintiff to supplement the subscriber list instanter.

**II.     Plaintiff should be given leave to supplement the subscriber list instanter pursuant to Rule 23(d).**

Rule 23(d) affords the district court "broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil,* 452 U.S. at 100. For example, it empowers the court with the "discretion and authority" to create "hybrid" classes under Rule 23(b)(2) with notice and opt out rights, where such rights are not required under Rule 23(b)(2). *In re Cincinnati Radiation Litig.*, 187 F.R.D. 549, 555 (S.D. Ohio 1999). An exercise of authority under Rule 23(d) is especially appropriate where the court deems it necessary to "protect the rights of absent class members." *Id.* Courts typically invoke Rule 23(d) to guarantee "members of the class procedural fairness." *Id.*

The Court has required that Plaintiff identify the actual subscribers, which the Court has stated is critical to the Court's definition of the class. (Doc. 120, at Page ID 5506). Plaintiff has done its best to comply with that order. While Plaintiff had hoped to accomplish this task within the date set by the Court, it was unable to do so, but not through lack of effort. Plaintiff seeks to include all members of the class. Again, because class notice has not gone out, because Defendants are still trying to amend the class definition, because the parties have requested that the Court postpone ruling on the cross motions for summary judgment until after the opt-out period for class notice expires, and because Defendants will suffer no prejudice, Plaintiff respectfully submits that allowing it to supplement the subscriber list is a proper exercise of the Courts' discretionary authority under Rule 23

## Local Rule 7.1 Conferral

In accordance with Local Rule 7.1(d), Plaintiff's counsel conferred with Defendants' counsel via email on October 15, 2014, to ask Defendants' position on the relief sought herein. On that same day Defendants stated they oppose the motion.

## Conclusion

Plaintiff has been diligent in compiling the subscriber list. Plaintiff respectfully requests that it be given leave to file the subscriber list instanter, pursuant to Rule 6(b)(1)(B) and Rule 23(d).

Respectfully submitted,

PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons.

By: s/Brian J. Wanca
Brian J. Wanca
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Facsimile: 847-368-1501

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/ Brian J. Wanca