# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) No. 1:12-cv-00729-RJJ ) |
| Plaintiff, | ) Hon. Robert J. Jonker ) |
| v. | ) ) **ORAL ARGUMENT REQUESTED** |
| STRYKER SALES CORPORATION, STRYKER BIOTECH L.L.C., STRYKER CORPORATION, HOWMEDICA OSTEONICS CORP, and JOHN DOES 1-10, | ) ) ) ) ) |
| Defendants. | ) |

## STRYKER ENTITIES' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION AND RENEWED MOTION TO STAY

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
David S. Almeida (Illinois Atty No. 6285557)
70 West Madison Street, 48th Floor
Chicago, Illinois 60602
(t): (312) 499-6300
(f): (312) 499-6301

**SEDGWICK LLP**
Anthony J. Anscombe (Illinois Atty No. 6257352)
One North Wacker Drive, Suite 4200
Chicago, Illinois 60606
(t): (312) 641-9050
(f): (312) 641-9530

*Counsel for Stryker Sales Corporation, Stryker Biotech LLC,
Stryker Corporation & Howmedica Osteonics Corp*

## PRELIMINARY STATEMENT

The Stryker Entities respectfully request this Court to reconsider its finding that the subject faxes were unsolicited as a matter of law. (DE 193.) The Court's Order rested on three palpably incorrect findings:

(1) That the manner in which PHI gave permission was factually and legally insufficient;

(2) That the TCPA requires the inclusion of "opt out" language on faxes sent with "prior express invitation or permission" ("permission"); and

(3) That a retroactive waiver by the FCC of its regulation, 47 C.F.R. §64.1200(a)(4)(iv), cannot affect this civil action.

As shown below, PHI clearly gave permission in a manner recognized by case law, FCC commentary, and congressional intent. Moreover, the TCPA's opt-out requirement expressly does **not** apply to faxes sent with permission. Finally, a retroactive waiver from the FCC of its own regulation (the consensual fax opt-out regulation) does not offend the separation of powers. And in any event, under the Hobbs Act, this Court lacks jurisdiction to refuse to recognize FCC final orders.

Additionally, because the FCC's determination of the Stryker Entities' waiver petition will likely obviate the lack of "opt out" language as a basis for liability, the Stryker Entities respectfully renew their request to stay this case pending the FCC's determination of their waiver petition.

**LEGAL STANDARD**

Local Rule 7.4 provides that a motion for reconsideration must (1) demonstrate a palpable defect that (2) would result in a different disposition of the case if corrected. W.D. Mich. L.R. 7.4(a); *see also Bray v. Dog Star Ranch, Inc.*, No. 1:08-CV-1005, 2010 WL 1418429, at *1 (W.D. Mich. Apr. 7, 2010) (granting reconsideration and noting that "[a] motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law"). Here, the Court's Order contains three palpable defects that, if corrected, would result in a different disposition of the case. Namely, the Stryker Entities should be awarded judgment as a matter of law, or, at the very least, afforded a trial on the issue of permission.

**ARGUMENT**

**I. DR. MARTINEZ'S VOLUNTARY PROVISION OF A FAX NUMBER IS AN EFFECTIVE GRANT OF PERMISSION.**

The Court appears to have believed that the AMA census form created a negative option, whereby permission was presumed. (*See* DE 193 at 3, 22.) This is incorrect. Contrary to the Court's findings, the census form provided only for the voluntary and conscious choice to receive faxes. (*See* DE 93 ¶ 5 (AMA census form).) Providing *any* response to the census itself was optional, and furnishing the fax number was also optional. Physicians who provided their fax numbers made the affirmative choice to receive "receive medically-related information, including advertising, approved by the AMA." (*See* Dep. Transcript of Tammy Weaver, AMA 30(b)(6) Representative, dated 10/31/13, at 23:18-24:19 (noting that physicians are not required to provide fax numbers to the AMA and most physicians do not provide a fax number).) That the AMA may have *preferred* that doctors provide their fax numbers did not make it compulsory.

Abundant case law has found that the voluntary provision of a fax number constitutes consent—or at least evidence of consent—to receive faxes. *See, e.g.*, *CE Design Ltd. v. King*

*Arch. Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011) (finding that plaintiff "signed a form that both authorized the publication of its fax number in the Blue Book of Building and Construction . . . and authorized the other subscribers . . . to 'communicate' with it, including via fax" was an indicator of consent); *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, No. 08-cv-481, 2009 WL 602019, at *2 (W.D. Wis. Mar. 9, 2009) ("By sending its fax number to defendant [on defendant's form], plaintiff cannot assert that the fax advertisements it received from defendant were 'unsolicited,'…"); *Practice Mgmt. Support Serv., Inc. v. Appeal Solutions, Inc.*, No. 09-cv-1937, 2010 WL 748170, at *2-3 (N.D. Ill. Mar. 1, 2010) ("[P]laintiff's voluntary communication of its fax number [on defendant's form] precludes [it] from asserting that the faxes were unsolicited under the TCPA."); *Chapman v. Wagener Equities, Inc.*, No. 09-cv-07299, 2014 WL 540250, at *14 (N.D. Ill. Feb. 11, 2014) (same); *Travel 100 Grp., Inc. v. Mediterranean Shipping Co.*, 383 Ill. App. 3d 149, 155, 159 (1st Dist. 2008) (finding voluntary provision of a fax number on form authorizing release of the number to industry groups constituted permission).

The law is similarly well-settled in the telephone context. *See, e.g.*, *Baird v. Sabre, Inc.*, 995 F. Supp. 2d 1100 (C.D. Cal. 2014) (reviewing FCC rulings and case law holding that the voluntary submission of telephone numbers constitutes invitation or permission – holding true even when consent was provided through a party other than the caller/sender); *Emanuel v. Los Angeles Lakers, Inc.*, No. CV 12-9936, 2013 WL 1719035, at *3 (C.D. Cal. Apr. 18, 2013); *Pugliese v. Prof'l Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *7 (E.D. Mich. June 29, 2010) (granting defendant summary judgment on TCPA claim; "The F.C.C. stated in a 2008 declaratory ruling that, . . . 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given . . . .'").

The FCC has recommended that, to prove that a fax recipient gave permission, "a

company that requests a fax number on an application form could include a clear statement indicating that, by providing such fax number, the individual or business agrees to receive facsimile advertisements from that company or organization." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3811 (2006) (hereinafter "2006 Order"); *see also id.* at 3794. Similarly, the TCPA's legislative history shows that Congress did not intend the TCPA to proscribe the voluntary provision of a number. *See, e.g.*, H.R. Rep. No. 102-317, at 13 (1991) (noting that the term telephone solicitation "does not apply to calls or messages where the called party has in essence requested the contact by providing the caller with their telephone number").

Finally, the Court raised a number of questions about the scope of the permission given by Dr. Martinez. (*See* DE 193 at 22.) These questions should be resolved in Stryker's favor, as the TCPA should be interpreted in accordance with common law doctrines of consent and agency. Congress enacts statutes in the context of existing law. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. New Jersey Dep't of Envt'l Prot.*, 474 U.S. 494, 501 (1986) (quoting *Edmonds v. Compagnie Gen. Transatlantique*, 443 U.S. 256, 266-67 (1979)). Dr. Martinez received exactly the kind of fax, from exactly the kind of sender, which he should have anticipated based on the information on the AMA census form before him in 2003. He never conditioned his consent on opt-out language. Indeed, in 2003, no opt-out requirement existed in the TCPA or in any FCC regulation. His permission is binding on his employer.

## II. THE TCPA EXPRESSLY DOES NOT REQUIRE OPT-OUT NOTICES FOR FAXES SENT WITH PERMISSION.

The Court held that the TCPA requires "opt out" notices on faxes sent with permission: "Congress itself provided some clues by singling out three elements for a successful consent defense, one of which is an opt out notice. (citing 47 U.S.C. § 227(b)(1)(C)). That opt out notice is required even when there is an established business relationship, and even when there is no question that the sender received the fax number directly from the recipient." (DE 193 at 23.)

The Court's analysis confuses two distinct and independent statutory provisions in the TCPA—the established business relationship exception to liability for sending *unsolicited* faxes (§ 227(b)(1)(C)), and prior express permission (§ 227(a)(5)), which exempts senders of *solicited* faxes from the TCPA's liability scheme. Under the TCPA's express language, the opt out requirement applies *only* to "established business relationships," not to faxes sent by permission. Indeed, as the FCC stated in defining permission, "[i]n the ***absence of an [established business relationship]***, the sender must obtain the prior express invitation or permission from the consumer before sending the facsimile advertisement." 2006 Order, 21 F.C.C. Rcd. at 3811 (emphasis added).

The Court's invocation of congressional intent is manifestly refuted by the TCPA's history of amendment. As originally enacted in 1991, the TCPA contained no reference to opt-out notices. The statute simply forbade the sending of "unsolicited advertisements." In 2005, Congress loosened the TCPA's liability scheme by creating the "established business relationship" defense found at 47 U.S.C. § 227(b)(1). Congress left the remainder of the statute unchanged, however, including the statutory definition of "unsolicited advertisement." The need for the new opt-out requirement made sense in the context of faxes sent without permission. While an established business relationship might *imply* consent, Congress wanted to ensure that

5

recipients had an easy way to avoid future unwanted faxes. Accordingly, the "three elements of a successful consent defense" cited by the court *only* apply to faxes sent based on an established business relationship, not faxes sent with permission. *See, e.g.*, *APB Assoc., Inc. v. Bronco's Saloon, Inc.*, 297 F.R.D. 302, 320 (E.D. Mich. 2013) (noting § 227(b)(1)(C) provides an exception for certain *unsolicited* faxes).

### III. THE FCC CAN IMPLEMENT ORDERS RETROACTIVELY IN A MANNER THAT IMPACTS PENDING PRIVATE ACTIONS AND COURTS LACK JURISDICTION TO FIND OTHERWISE.

In its January 12, 2015 Opinion, the Court held that "the FCC cannot use an administrative waiver to eliminate statutory liability in a private cause of action." (DE 193 at 25.) This holding is premised upon the notion that it violates the separation of powers for the FCC to direct Article III courts to make particular rulings. This, however, is not the result of the FCC's 2014 Order, which merely modifies the operative date of an existing FCC regulation. In any event, the Court lacks jurisdiction under the Hobbs Act to refuse to recognize FCC final orders.

There is no dispute here that the <u>only</u> source of a requirement for opt-out notices on solicited faxes is the FCC's regulation, 47 C.F.R. §64.1200(a)(4)(iv), which is <u>not</u> mandated by statute. The FCC has authority to waive its own regulations. *See, e.g.*, 47 C.F.R. § 1.3; *Nat'l Ass'n of Broadcasters v. F.C.C.*, 569 F.3d 416, 426 (D.C. Cir. 2009) (permitting FCC to waive requirements not mandated by statute). The solicited fax rule can thus be modified or abrogated by the FCC. Moreover, the FCC's ability to waive the Solicited Fax Rule is not limited to its own enforcement power. (*See* DE 193 at 25.) While the TCPA provides a private right of action, the FCC is free to "promulgate the substantive standards enforced through that private right of action." *City of Arlington, Tex. v. F.C.C.*, 133 S. Ct. 1863, 1871 n.3 (2013).[1] The FCC, through

---

[1] The Seventh Circuit's decision in *Ira Holtzman, C.P.A. v. Turza* simply recognized that, in addition to the FCC's enforcement power, the TCPA provides for a private right of action. *See* 728 F.3d

its 2014 Order, clearly intended to "define the scope of when and how our rules apply" to private causes of action. *See* 2014 Order, 61 Communications Reg. (P&F) 671. To hold that the FCC cannot so abrogate its own regulation would create a one-way ratchet where the FCC can expand liability for private litigants (by requiring opt-out notices for solicited faxes), but cannot restrict the liability it created.[2]

The FCC's 2014 Order—and subsequent final orders granting retroactive waivers—does not impose upon this Court an obligation to make any particular findings or rulings or impact the scope of the Court's judicial power. The FCC took pains to note that its Order does not confirm or deny whether litigants had permission to send the faxes at issue, and thus courts must still make that threshold determination. *See* 2014 Order, 61 Communications Reg. (P&F) 671 at *9.

Further, under Supreme Court precedent, a regulation or statute that has the ancillary effect of impacting ongoing private rights of action does not implicate the separation of powers. As the Supreme Court recently reiterated, agencies have authority to promulgate substantive standards that may impact private rights of action. *See City of Arlington*, 133 S. Ct. at 1871 n.3; *see also Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 440 (1992) (stating that Congress is free to "affect the adjudication of . . . cases . . . by effectively modifying the provisions at issue in those cases"). Similarly, laws and regulations can be applied retroactively. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994) (holding Congress can apply civil legislation retroactively if its intent is clear); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (noting

---

682, 688 (7th Cir. 2013). *Turza* did not hold that the FCC's waiver authority is limited to its own enforcement powers.

[2] PHI may invoke *Natural Resources Defense Council v. E.P.A.*, 749 F.3d 1055 (D.C. Cir. 2014). *Natural Resources* involved the EPA's creation of an affirmative defense to a statutorily created private right of action. *Id.* at 1063. Here, by contrast, the FCC is granting relief from its own regulation, which is the basis for PHI's purported private right of action. *See Nat'l Ass'n of Broadcasters*, 569 F.3d at 426.

administrative rules can have retroactive effect if language requires).

Finally, the Hobbs Act obliges this Court to follow the FCC's waiver ruling, as the "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" FCC final orders lies with the court of appeals. 28 U.S.C. § 2342; *F.C.C. v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984). Recently, the Sixth Circuit evaluated the Hobbs Act in the context of final FCC TCPA Orders. *Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444 (6th Cir. 2013). Except in narrow circumstances not relevant here, *Leyse* held that the Hobbs Act deprives district courts from even entertaining arguments that FCC final orders are invalid. *Id.* at 459; *see also CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010) ("[D]eeming agency action valid or ineffective is precisely the sort of review that the Hobbs Act delegates to the courts of appeals . . . .").

The Hobbs Act thus divests district courts of jurisdiction to set aside orders exempting certain conduct from the scope of the TCPA, *see Leyse*, 545 F. App'x at 458-59, and to set aside orders as "outside [the FCC's] authority," *CE Design*, 606 F.3d at 448. Further, district courts cannot "enjoin action that is the outcome of the agency's order." *ITT World Commc'ns, Inc.*, 466 U.S. at 468. By finding that the October 30, 2014 Order has no effect on private litigants—despite the Order's plain language to the contrary—the Court has both impermissibly reviewed the FCC's final order, and has effectively enjoined its application. Accordingly, the Court should reconsider its ruling that the FCC's 2014 Order and subsequent waivers are of no effect here.

### IV. THIS COURT SHOULD STAY THIS ACTION PENDING THE FCC'S DETERMINATION OF THE STRYKER ENTITIES' PENDING WAIVER REQUEST.

As the FCC's final order regarding the Stryker Entities' pending waiver petition may have a substantial impact on this action, the Stryker Entities renew their Motion to Stay this action for the limited period of the FCC's evaluation of their petition. Notably, a stay has been granted in

the overwhelming majority of cases (over a dozen) potentially impacted by the 2014 Order, some even years after the cases were filed. *See, e.g.*, *Kaye v. Amicus Mediation & Arbitration Group, Inc., et al.*, No. 13-cv-00347 (D. Conn. Dec. 8, 2014), at DE 123 (granting motion to stay in light of the 2014 Order despite classes being certified, denying three prior motions to stay, and denying motions for reconsideration and interlocutory appeal); *Nack v. Walburg*, 715 F.3d 680, 687 (8th Cir. 2013) (recommending the district court entertain a stay despite the case having been filed in 2010) (stay granted Sept. 12, 2013). Notably, PHI's own lawyers have supported stays of litigation in light of the FCC's October 30, 2014 Order so they could pursue their own appeal before the D.C. Circuit. Indeed, considering that the FCC's retroactive waivers are being granted for the benefit of public interest in an effort to remedy the substantial confusion engendered by the FCC's own prior order—specifically, the 2006 Order, which "stated that "the opt-out notice requirement only applies to communications that constitute unsolicited advertisements," 61 Communications Reg. (P&F) 671, at *7—the need for a stay is especially acute here. *See also id.* at *11-13 (Commissioners Pei and O'Reilly, concurring in part and dissenting in part) (arguing that the FCC lacked authority, under the TCPA, to require opt-out language on solicited faxes).

On September 8, 2014, when the Court denied the Stryker Entities' first request for a stay (DE 160), the Court could not assess how long the petitions seeking invalidation of §64.1200(a)(4)(iv)/retroactive waivers might remain pending before the FCC. Now, however, the FCC has issued its final order regarding the Solicited Fax Rule, and has set a six-month deadline from the date the Order was released (October 30, 2014) to file waiver petitions. The Stryker Entities' petition is fully briefed. Given the six-month window, the Stryker Entities expect a final order considering the petitions shortly after the window closes on April 30.

9

Considering that trial is set for April 14, 2015, a stay pending resolution of these regulatory proceedings is prudent. Class notice has not yet issued, and the absent class members thus do not even know about this action and are not waiting for PHI to vindicate their rights. Although the Stryker Entities recognize that a stay will engender some delay, that delay is outweighed by the prejudice and expense of a trial that the FCC's impending action may either obviate, or require a second time.

## CONCLUSION

For the foregoing reasons, Stryker Sales Corporation, Stryker Biotech, LLC, Stryker Corporation and Howmedica Osteonics Corp respectfully request this Court to enter an order:

(i) granting their Motion for Reconsideration and either granting the Stryker Entities' motion for summary judgment that the faxes at issue were solicited, (DE 91, 92), or, alternatively, denying PHI's motion for summary judgment that the faxes at issue were unsolicited, (DE 97, 98);

(ii) staying this action pending the FCC's review of the Stryker Entities' waiver petition; and

(iii) awarding all such other relief as the Court deems equitable and just.

Dated: February 6, 2015

By: /s/ David S. Almeida
One of Their Attorneys

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
David S. Almeida (Illinois Atty No. 6285557)
70 West Madison Street, 48th Floor
Chicago, Illinois 60602
(t): (312) 499-6300
(f): (312) 499-6301

**SEDGWICK LLP**
Anthony J. Anscombe (Illinois Atty No. 6257352)
One North Wacker Drive, Suite 4200
Chicago, Illinois 60606
(t): (312) 641-9050
(f): (312) 641-9530

*Counsel for Stryker Sales Corporation, Stryker Biotech LLC, Stryker Corporation & Howmedica Osteonics Corp*

## LOCAL RULE 7.1(D) CERTIFICATION

Pursuant to Local Rule 7.1(d), on February 6, 2015, undersigned counsel for the Stryker Entities spoke with counsel for PHI via telephone in an effort to obtain concurrence on the instant motion. Through its counsel, PHI indicated that it opposes the relief sought by this motion.

By: /s/ David S. Almeida
One of Their Attorneys

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and correct copy of the above and foregoing **MOTION FOR RECONSIDERATION AND RENEWED MOTION TO STAY BY DEFENDANTS STRYKER ENTITIES** was electronically filed via ECF, which effects service upon all parties who have entered an appearance in this case.

Dated this 6th day of February, 2015.

                /s/ David S. Almeida