**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly situated persons, | ) ) ) ) ) | No. 1:12-cv-00729-RJJ |
| Plaintiff, | ) ) | Hon. Robert J. Jonker |
| v. | ) ) ) | |
| STRYKER SALES CORPORATION, STRYKER BIOTECH L.L.C., STRYKER CORPORATION, HOWMEDICA OSTEONICS CORP. and JOHN DOES 1-10, | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT AND ATTORNEY FEE REQUEST**

On January 28, 2016, the designated third-party claim administrator provided its Declaration regarding the notice and administration of this class settlement. *See* Declaration of Deborah McComb, attached as Exhibit A. This declaration supports final approval of the settlement, including the fee requested. In sum, after notice to all Class members was sent, no Class member objected to any aspect of the settlement, including the fee request. Only two class members (0.028% of the class) requested to be excluded from the Settlement. Further, notice was sent to the U.S. and relevant state attorneys general and none of them objected. Because the Settlement is fair, reasonable, and adequate, the Court should grant final approval to it. The proposed order is submitted with this brief as Exhibit B.

## BACKGROUND

**I.     Background and Summary of Settlement**

As discussed in the brief in support of preliminary approval (Dkt. 267), this case has been hard fought over three and one half years. Plaintiff undertook massive third-party discovery efforts

1

to identify the historical subscribers to the telephone numbers that received the faxes. *See, e.g.,* Orders, Dkt. 153, 205.  Ultimately, through what the Court characterized at one hearing as a Herculean effort, all but approximately 100 of the class members were located.  Dkt. 205.  In total, Plaintiff took 13 depositions of Defendants' employees and third parties across 8 states.  As the Court discussed in its prior order, numerous records subpoenas were issued and acted upon.  And the result was the first class certification in a TCPA case over seminar advertisements.

This led to the instant settlement.  The settlement was reached at a settlement conference presided over by Hon. Hugh W. Brenneman.  The key terms of the agreement are summarized at pp. 4-6 of the brief in support of preliminary approval.  In particular, claiming class members will receive $500 per fax sent them, the maximum they could expect had the case gone to trial and Plaintiff prevailed.  *Id.* at p. 5.

## II.     Dissemination of Notice and Claims Process.

On October 26, 2015, after consideration of the Settlement Agreement and plan of notice, the Court entered an order preliminarily approving the Settlement and approving the class notice ("Preliminary Approval Order.").  Doc. 274.  In accordance with that Order, the settlement administrator sent the notice to the class on October 30, 2015.  *See* Ex. A, ¶¶ 10-12.  In addition, in accordance with the Class Action Fairness Act, the administrator timely provided notice of the settlement to the appropriate government officials on September 11, 2015.  *Id.*, ¶¶ 4-5.  No members of the Class objected to the Settlement.  *Id.*, ¶ 16.  Nor did any of the attorneys general.  *Id.*, ¶ 6.  This is true even though the settlement and class notice made clear that (1) the settlement is a common fund settlement where Defendant retains money not claimed by class members; and (2) Plaintiff's counsel was requesting a fee of "one third of the Settlement Fund ($2,282,333.33)." *Id.* at Ex. A thereto.  *See id.* at ¶¶ 4-6, 10-12, 16.

Rule 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., Federal Practice and Procedure § 1797.6 (3d ed. 2005). Here, in compliance with the Court's Orders, Plaintiff sent the notice by U.S. Mail to the Class members revealed through discovery to have been sent a fax by Defendants.

In this case, notice by U.S. Mail is the best practicable notice available. Defendant provided the contact information for the class members to the settlement administrator, who then took steps to independently verify that information. Ex. A, ¶¶ 7-8. This allowed for maximum reach to the class members. The Court was correct in ordering notice by U.S. Mail. This method of notice comports with the due process obligations under Rule 23 and is the best method of notice available.

Moreover, the content of the parties' Notice complied with Rule 23(c)(2)(B), which requires that the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." The class notice stated all of those things. Ex. A at Ex. A thereto.

Further, the Claim form at issue here was an easy to read and understand 1-page form. *Id.* at Ex. B thereto. Each Settlement Class Member merely had to provide their contact information and then verify ownership of the subject fax number from July 16, 2008 through July 16, 2012.

*Id.* The Settlement Class members did not have to provide copies of the subject fax, or attest to remember receiving the subject fax. *Id.*

The administrator confirmed that 767 class members elected to partake of the benefits made available to them under the settlement. *Id.*, ¶ 17. This is 10.7% of the total class members mailed the notice. *Id.* at ¶¶ 11, 17. These class members accounted for 1,449 of the fax transmissions at issue. *Id.* at ¶ 11. That number is likewise 10.6% of the total at issue. *Id. See* Agreement (Dkt. 267-1) at p. 1. As discussed below, to the extent relevant, these figures demonstrate interest and approval on the part of the class and are consistent with or exceed the claims rate in similar class actions.

## DISCUSSION

### I. THE COURT SHOULD APPROVE THE SETTLEMENT.

#### A. Standard for judicial evaluation and approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); *Int'l Union, United Auto, Aerospace and Implement Workers of America v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

#### B. Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.

Courts typically consider the following factors in evaluating a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and the class representatives; (6) the reaction of absent class

4

members; and (7) the public interest." *Brent v. Midland Funding, LLC,* 2011 WL 3862363 at *12 (N.D. Ohio 2011), *citing Int'l Union,* 497 F.3d at 632. Here, these factors show the settlement should be approved.

### 1. The risk of fraud or collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). Here, the settlement record proves that the Settlement is not the product of collusion. Settlement was reached only after extensive discovery and litigation to a decision on the merits. The parties were able to reach an agreement with the help of the Court. The parties' Agreement is the result of settlement negotiations conducted under the guidance of the Court. Therefore, there is no indication that this Settlement was the product of collusion.

### 2. The complexity, expense and likely duration of the litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). There is no exception here. Defendants have shown that they will vigorously oppose liability for Plaintiff's and the Class members' claims in every conceivable way. Defendants have agreed to avoid the risks and costs of pursuing this case to a judgment on the merits by making the Settlement Fund available to the Class. This Settlement permits the Class to obtain full value cash payments from the Settlement Fund without the risks and costs of further litigation.

### 3. The amount of discovery.

The parties engaged in written and oral discovery in this case sufficient for this Court to reach a decision on the merits. As a result, the Parties are aware of the relevant facts and issues

present here, which allowed them to make an informed decision prior to agreeing to the settlement terms. Therefore, the stage of proceedings and amount of discovery supports final approval.

### 4. Likelihood of success on the merits.

At the time the Settlement was reached, the Court had certified the class and had set discret issues for trial, which had been scheduled. Under the cloud of uncertainty presented by the upcoming trial, the Parties engaged in settlement negotiations under the guidance of the Court. To avoid the risk and uncertainty of trial and a possible subsequent appeal, the settlement was reached. Every Class member had a full, fair, and straightforward opportunity to submit a claim by establishing that they owned the fax number on the relevant date in order to obtain $500 per fax from Defendants.

Due to the risks and expenses involved in pursuing the lawsuit to conclusion and the lofty costs of pursing an appeal, reaching this Settlement is a fair, reasonable, and adequate result for the Class. At trial, Plaintiff and the Class may get nothing. Therefore, this Settlement is an excellent result when comparing the strength of the case to the settlement amount because it provides Class members with an opportunity to receive a cash payment of their full damages.

### 5. Opinion of Class Counsel and Class Representative.

Plaintiff and its counsel have concluded that the terms and conditions of this Settlement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation. Class Counsel have substantial experience litigating class actions, and in particular claims about unsolicited faxes. They have been appointed class counsel in dozens of cases. *See* Prelim. App. Br. at pp. 9-10. Under these circumstances, the Court should give weight to Class Counsel's opinions about the settlement.

### 6. The reaction of absent class members.

A low rate of opt-outs or opposition reflect favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). Here, the Class members overwhelmingly support the settlement. This is evidenced by the fact that no Class members objected to the settlement and only 2 (0.028% of the class) opted out. *See* Ex. A at ¶¶ 15-16. *See Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement).

The absence of objections shows support for the Settlement, particularly when compared to other class action settlements. *See In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1020-21 (N.D. Ill. 2000), *aff'd by* 267 F.3d 743 (7th Cir. 2001) (acceptance rate of 99.9% of class members "is strong circumstantial evidence in favor of the settlements"); *Hispanics United of DuPage County v. Village of Addison, Illinois,* 988 F.Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 163, 175 (S.D.N.Y. 2000) (a small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("small number of objectors is a good indication of the fairness of the settlement"). Moreover, the number of class members who elected to submit claims is consistent with similar settlements and demonstrates the class's interest in and approval of the settlement. *See* Declaration of David M. Oppenheim, submitted as <u>Exhibit C</u> (filed under seal).

### 7. The public interest.

Courts have held that a settlement of class action litigation serves the public interest. *See Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America v. Gen. Motors*

*Corp.*, 497 F.3d 615, 632 (6th Cir. 2007).  Based upon the foregoing, as well as upon the judgment of experienced class counsel, Plaintiff requests that the Court approve the proposed Settlement.

**II.     THE COURT SHOULD APPROVE THE REQUESTED FEES AND EXPENSES, AND AWARD TO PLAINTIFF.**

For the reasons discussed previously, the requested attorney fee of one third of the settlement fund is consistent with *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) and its progeny, as well as awards in similar prior cases.  *See* Preliminary Approval Br. at pp. 10-14; Reply Br. (Dkt. 272) at pp. 2-6.  *See also US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1545 (2013) (discussing *Boeing* rule and describing it as one "designed to prevent freeloading").  "This Court has 'recognized consistently' that someone 'who recovers a common fund for the benefit of persons other than himself' is due 'a reasonable attorney's fee from the fund as whole.'"  *Id.* at 1550, *quoting Boeing,* 444 U.S. at 478.  *See In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015) ("Under the "common fund" doctrine, an attorney who recovers a common fund for the benefit of a class is entitled to a reasonable portion of the fund that is *made available* to the class rather than the amount actually *claimed* by the class.") (emphasis in original).

Defendant has oddly contended that this is not a common fund case because it is entitled to the unclaimed money.  But that was the premise of the holding in *Boeing.  Id.* at 748-51 ("Any right that Boeing may establish to the return of money eventually unclaimed is contingent on the failure of absentee class members to exercise their present rights of possession.").  Indeed, it was only that feature that afforded the defendant standing to contest attorney's fees in the first place.  *Id.* at 754 n.4 (*in dissent*).  *See Tennille v. Western Union Co.*, 809 F.3d 555, 559-60 (10th Cir. 2015), *discussing Boeing* and *Copeland v. Marshall,* 641 F.2d 880, 905 n. 57 (D.C. Cir. 1980).

As the Tenth Circuit noted, in *Boeing*, "[t]he Supreme Court entertained Boeing's challenge to the scope of an attorney-fee award paid from the settlement fund, observing that

8

Boeing had 'an interest, arising from its colorable claim for the return of excess money, in whether attorney's fees could be assessed against the entire fund' as opposed to only that portion of the settlement fund actually claimed by class members." *Tennille*, 809 F.3d at 562, *quoting Boeing* at 481 n.7.  The Tenth Circuit concluded that the defendant there had no standing to contest the fees because, unlike in *Boeing* and the instant case, it did *not* have a right to the unclaimed funds.  *Id.*

Moreover, in *Poertner v. Gillette Co*., 618 Fed.Appx. 624, 626 (11th Cir. 2015), the Eleventh Circuit recently affirmed a $5.68 million attorney fee award in a claims-made settlement where each class member was entitled to up to $3 per package of batteries purchased, and the claims administrator reported 55,346 out of more than 7 million class members made claims totaling $344,850.  The defendant did not segregate money to a separate fund.  *Id.*  Objectors appealed, and the Eleventh Circuit affirmed, holding "as one learned treatise aptly illustrates, properly understood '[a] claims-made settlement is ... the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant'; indeed, the two types of settlements are 'fully synonymous.'"  *Id.* at 628, n.2 (citing Newberg on Class Actions § 13:7 (5th ed.)).

Courts throughout the country have so held.  *See Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007) (holding that the district court abused its discretion by calculating fees based strictly on the actual recovery, expressly rejecting the idea that basing the award on the Available Benefit would create a windfall for class counsel); *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999), *cert. denied,* 530 U.S. 1223, 120 S.Ct. 2237, 147 L.Ed.2d 265 (2000); *Williams v. MGM–Pathe Commun. Co.,* 129 F.3d 1026 (9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund ($3,300) and awarding attorneys' fees of 33 percent of the available fund ($1.5 million)); *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, *4 (W.D. Mich. Oct. 26, 2007) ("The Supreme Court has recognized consistently that a litigant or a

9

lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."), *citing Boeing*; *In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, *4 (E.D. Mich. Jan. 20, 2015) (same), *citing Boeing* and *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-CV-00738-RNC, 2014 WL 3778211, at *6 (D. Conn. July 31, 2014) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants."); *McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F.Supp.2d 806 (E.D.Wis. 2009) (relying on *Boeing* in awarding 33 percent of the available fund, a fee award that exceeded the amount actually claimed).

"[T]he Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in [common fund] cases.'" *Stanley v. U.S. Steel Co.*, 2009 WL 4646647 at *1 (E.D. Mich. Dec. 8, 2009), *quoting Rawlings v. Prudential–Bach Props., Inc.,* 9 F.3d 513, 515 (6th Cir.1993); *In re Sulzer Orthopedics, Inc.,* 398 F.3d 778, 780 (6th Cir.2005). "Particularly, where counsel's efforts create a substantial common fund for the benefit of the class, they are entitled to payment from the fund based on a percentage of that fund." *Id.*, *citing Brotherton v. Cleveland,* 141 F.Supp.2d 907, 909 (S.D. Ohio 2001); *Basile v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.,* 640 F.Supp. 697 (S.D. Ohio 1986). "This 'allows a Court to prevent ... inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit.'" *Id., quoting Boeing,* 444 U.S. at 478.

"Use of the percentage method also decreases the burden imposed on the Court by eliminating a full-blown, detailed and time consuming lodestar analysis while assuring that the

10

beneficiaries do not experience undue delay in receiving their share of the settlement." *Id.*, *citing In re Activision Sec. Litig.,* 723 F.Supp. 1373 (N.D.Cal.1989); MCL 4th § 14.121.  Harvard Law Professor David S. Rosenberg submitted a report in a similar class action likewise explaining the benefits of compensating class counsel with one third of the total sum made available by the defendant.  That report is attached as Exhibit D.[1]

Although unnecessary, as discussed previously, the fee request here is also supported by an optional lodestar cross-check.  *See* Preliminary Approval Br. at pp. 14-16; Reply Br. at pp. 6-8; *Van Horn v. Nationwide Prop. and Cas. Co.*, 436 Fed.Appx. 496, 501 (6th Cir. 2011), *citing Rawlings v. Prudential–Bache Props., Inc.,* 9 F.3d 513, 516 (6th Cir. 1993).

As such, the additional information regarding the reaction to the settlement (Ex. A) is relevant to the fee request only to the extent that it shows that no member of the class and no federal or state government objects to the request.  Even if that were not the case, however, the claim rate here is consistent with or exceeds that in several recent settlements in federal courts in which class counsel has been involved—and in which a fee of one third (or higher) of the total fund was approved.  These include *Van Sweden v. 101 VT, Inc.*, Case No. 10-CV-253 (W.D. Mich. July 30, 2015) (one third fee); *Jackson's Five Star Catering, Inc. v. Beason*, Case No. 10-CV-10010 (E.D. Mich. Apr. 5, 2015) (same); *Sandusky Wellness Center v. Heel, Inc.*, Case No. 12-CV-1470 (N.D. Ohio Apr. 25, 2014) (same); *Hawk Valley v. Taylor*, Case No. 10-CV-804 (E.D. Pa. Aug. 6, 2015) (same); *Hinman v. M&M Rental, Inc.*, Case No. 06-CV-1156 (N.D. Ill. Oct. 24, 2014) (settlement with Maxum Indemnity Company) (same); *Hinman v. M&M Rental, Inc.*, Case

---

[1] This Court can take judicial notice of the Rosenberg Report as a public record filed in another case.  *See, e.g., In re Moncier*, 488 Fed.Appx. 57, 61 (6th Cir. 2012); *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir.1980); *Granader v. Public Bank,* 417 F.2d 75, 82–83 (6th Cir.1969).

No. 06-CV-1156 (N.D. Ill. Mar. 13, 2015) (settlement with Security Insurance Company) (same); *The Savanna Group, Inc. v. Trynex, Inc.*, Case No. 10-CV-7995 (N.D. Ill. Mar. 4, 2014) (same); *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, Case No. 10-CV-331 (E.D. Wis. July 19, 2013) (35% fee). The final approval orders in these cases are attached as <u>Group Exhibit E</u>; Ex. C discusses the claim rates in those cases.

With regard to the expenses, Defendant has taken issue with three particular expense items. Its quibbles are without merit. First, it objects to a payment of $2,000.00 to Thompson Reuters. That was a fee paid to take the August 14, 2013 deposition of Defendant's own expert, Dr. Ernest Chiodo, whom Defendant obtained through Thompson Reuters. Second, the $17,000.00 owed to "Digital Factors" is for Plaintiff's expert, Robert Biggerstaff, who provided a report critical to establishing the faxes successfully sent by Defendant. Finally, Defendant objects to a $278.00 livery cost incurred as part of the class representative's travel for attendance at one of the three settlement conferences that led to the settlement. This is the cost of a round trip from Ms. Hollander's home to and from the closest airport (in Cincinnati). Defendant did not volunteer to excuse Ms. Hollander's participation at the time and does not identify its issue with this aspect of her travel.

### III.     THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARD TO PLAINTIFF.

Additionally, the Court should the request for Plaintiff to receive $15,000.00 from the Settlement Fund as an incentive award for serving as the Class Representative. As discussed in the Brief in support of Preliminary Approval, Plaintiff devoted significant time to the pursuit of the action, including answering discovery requests, providing a 3.5-hour deposition, and traveling to attend three settlement conferences.

Courts routinely award such "incentive payments" to the persons who assume the special litigation burden of class representative and thereby benefit the entire class. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving class incentive awards of $8,000, $9,000, and $14,000); *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives). As one district court explained:

> Incentive awards serve an important function in promoting class action settlements, particularly where, as here, the named plaintiffs participated actively in the litigation. *Denny v. Jenkins & Gilchrist*, 2005 WL 388562, at *31 (S.D.N.Y. Feb. 18, 2005). Courts 'routinely approve incentive awards to compensate named plaintiffs for the service they provided and the risks they incurred during the course of the class action litigation.' *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2000). 'Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.' *In re Compact Disc*, 292 F. Supp. 2d at 189.

*In re Lupron Mktg. and Sales Practice Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005).

Here, as noted previously, the requested incentive award is similar to those awarded in other TCPA cases. *See* Group Ex. E. Specifically, the court approved the same $15,000 sought here in *Jackson's*, *Sandusky*, *Hawk Valley*, *Trynex* and *M & M Rental*. The negotiated award was lower ($9,500.00) in the other two cases where the common fund was lower than $1 million. *See 101 VT* (settlement fund was only $112,500.00); *Sawyer* ($900,000.00 settlement fund). But as discussed here, there is no reason why Plaintiff, who was heavily involved in this case and who helped secure a nearly $7 million common fund to pay full recovery for class members, should not

at least receive the same incentive award as the plaintiffs in *Jackson's*, *Sandusky*, *Hawk Valley*, *Trynex* and *M & M Rental*.

## CONCLUSION

For the reasons discussed herein and previously, the Court should approve the settlement including the fee, expense, and incentive award requests. They are consistent with both controlling precedent and with many similar approved settlements.

Date: January 29, 2016

                Respectfully submitted,

                PHYSICIANS HEALTHSOURCE, INC., an Ohio corporation, individually and as the representative of a class of similarly-situated persons

By:    s/ David M. Oppenheim
       One of Plaintiff's attorneys

Brian J. Wanca
David M. Oppenheim
Ryan M. Kelly
Wallace C. Solberg
Glenn L. Hara
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847/368-1500
Fax: 847-368-1501

CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing brief was filed and served upon all counsel of record by the ECF system on January 29, 2016.

s/David M. Oppenheim
One of Plaintiff's Attorneys